Corporate Interiors, Inc. v Pappas (2004 NY Slip Op 50204(U))

[*1]

 Corporate Interiors, Inc. v Pappas

2004 NY Slip Op 50204(U)

Decided on April 7, 2004

Supreme Court, Queens County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 7, 2004

Supreme Court, Queens County
 CORPORATE INTERIORS, INC., Plaintiff, - -
against
EMMANUEL PAPPAS and INTERIOR BUILDERS GROUP, INC., Defendants.
INDEX NO. 8570/00

Thomas V. Polizzi, J.
Plaintiff, Corporate Interiors, Inc., (CI), commenced this action against its former officer, stockholder and employee, Emmanuel Pappas, (Pappas) and his corporation, Interior Builders Group Inc., (IBG). The complaint alleges the following ten (10) causes of actions:
1.Plaintiff seeks recovery of the $40,000 bonus paid
to Pappas for the fiscal year ending February 28, 2000 plus salary paid to Pappas based on the faithless servant doctrine, in the total sum of not less than $125,000.
2.Plaintiff requests damages of not less than
$1,000,000 based upon Pappas' breach of his fiduciary duties and acts of unfair competition.
3.Plaintiff demands damages of not less than
$100,000 based on Pappas' breach of an expense agreement to use plaintiff's American Express card and corporate bank card solely for the operation of plaintiff's business.
4.Plaintiff seeks damages of not less than
$1,000,000 based on Pappas' acts of unfair competition, improper solicitation of plaintiff's customers and misappropriation of plaintiff's trade secrets and proprietary and confidential client information.
5.Plaintiff requests an injunction restraining
defendants from using plaintiff's trade secrets and proprietary and confidential client information.
[*2]
6.Plaintiff demands an accounting of all revenue
derived by defendants from business performed for plaintiff's clients.
7.Plaintiff demands an accounting for Pappas'
dereliction of duty, failure to perform job responsibilities, disposition, waste and diversion of plaintiff's assets.
8.Plaintiff seeks damages of not less than $75,000
based on Pappas' negligence with respect to work performed at 250 Mercer Street, in Manhattan, while Pappas was employed by plaintiff.
9.Plaintiff seeks damages of not less than
$1,000,000 based on Pappas' acts of interference with prospective business relations between plaintiff and certain clients.
10.Plaintiff seeks damages of not less than
$1,000,000 based on defendants' conversion of plaintiff's trade secrets and proprietary and confidential client information.
Issue was joined and defendants' amended answer contains not only the usual denials but twenty three (23) affirmative defenses as well.
Plaintiff corporation was formed by Anthony Raguseo (Raguseo) in 1984 for the purpose of engaging in general contracting work consisting, inter alia, of the full renovation of commercial space and residential apartments. In 1988 defendant Pappas began working for CI, became its vice president and a division of labor and responsibility fell into place. Raguseo was the inside man while Pappas was responsible for supervising the field operations. CI had for several years been engaged to perform renovations for various companies and when Pappas came on the scene he supervised CI's projects and proceeded to bring in new business, new clients, to CI. In 1989, Pappas, a vice president, purchased two (2) shares of CI, and became a 2% stockholder.
In 1997, the Raguseo-Pappas relationship began to sour. Pappas became frustrated with Raguseo's management of CI, and allegedly expressed his dissatisfaction on several occasions to Raguseo. In 1999, Pappas, without telling Raguseo, formed the defendant corporation, IBG, and in February 2000 began to set up the necessary paperwork to put IBG into operation. On March 14, 2000, after receiving a $40,000 bonus, Pappas told Raguseo he was quitting and left his employment. In a letter dated March 28, 2000, he tendered his stock to the plaintiff and resigned as an officer. Immediately prior to his departure date and while an employee of CI, IBG (Pappas) submitted proposals to five (5) customers and submitted two (2) invoices for payment. After leaving his employment Pappas submitted proposals to and performed work for several companies for whom CI had previously done renovations.
There was no employment contract between CI and Pappas, no non-competitive clause in the Stockholders Agreement which was executed when Pappas became a 2% [*3]stockholder nor was there any restrictive covenant binding Pappas to CI. There is no dispute that Pappas, while admittedly an officer and stockholder of CI, was an at-will employee.
After extensive discovery, the bench trial was assigned to this part and the trial of the action commenced on March 22, 2004. The court was immediately confronted with ten (10) in limine motions, five (5) each for plaintiff and defendants. Thousands of documents had been exchanged and on the first day of testimony, fifty one (51) were admitted into evidence.
With a view towards expediting the resolution of the issues this court had reserved decision on the motions and bifurcated the trial. It had been anticipated both by the court and counsel that the liability phase should take no more than three weeks; however, after the first day it was obvious to all that the time projection had to be inordinately extended. It was at this juncture that the attorneys requested a recess of the trial pending the court's determination of the submitted
in limine motions. The court agreed and granted the attorneys' application.
Plaintiff moves, in limine, as follows:
1.Plaintiff seeks an order precluding defendants
from objecting to plaintiff's right to recover damages and lost profits through the date of the trial based on Pappas' egregious breach of fiduciary duties as an officer and shareholder of plaintiff and his other tortious conduct.
2.Plaintiff seeks an order limiting defendants'
proof of expenses on jobs performed for plaintiff's "... current or former customers..." to "direct costs" which were incurred on the particular jobs (Gomez v. Bicknell, 302 AD2d 107, 115, 756 NYS2d 209, 215 [2d Dept 2002], motion for leave to appeal dismissed in part and denied in part, 100 NY2d 574, 764 NYS2d 383 [2003]).
3.Plaintiff seeks an order precluding defendants
from offering in evidence at trial checks and other evidence of payment to subcontractors and vendors (other than documents already produced by defendants) in connection with work performed by defendants for plaintiff's "... current or former customers..." with whom Pappas had "contacts" through March 28, 2000 based on defendants' admitted destruction of material evidence in this case. This Court's order (LeVine, J.) dated September 15, 2003 denied plaintiff's motion to preclude based on spoliation "... without prejudice to renewal at trial upon a showing of genuine prejudice ...." (Emphasis added.) Plaintiff will demonstrate at trial the "... genuine prejudice ..." referred to in the September 15 Order.
4.Plaintiff seeks an order precluding defendants
from offering expert testimony at trial because they violated Justice LeVine's Order dated January 15, 2004 ("January 15 Order"). The January 15 order granted plaintiff's motion to
preclude defendants' purported expert from testifying at trial to the extent that defendants were directed to serve a "... supplemental, more detailed response to plaintiff's demand for expert disclosure regarding the substance of the facts and opinions on which defendants' expert is expected to testify." Defendants' purported supplemental expert disclosure does not contain the "detail[s]" required by the January 15 Order because it is replete with irrelevant generalities [*4]which, based on Gomez, have nothing whatsoever to do with this lawsuit.
5.In the event the Court allows defendant's
purported expert to testify, the expert should be precluded from offering evidence regarding defendants' expenses on jobs performed for plaintiff's "...current or former customers..." except for "direct costs" in accordance with Gomez. The court should preclude the purported expert from testifying about so-called "[g]eneral industry standards of revenues received and expenses incurred in performing general contracting jobs, including without limitation labor costs, reasonable compensation levels, overhead costs and profit margins " because such information is irrelevant based on Gomez.
Defendants move, in limine, as follows:
1. (A) For an order to preclude plaintiff from introducing evidence of customers defendants performed work for after Pappas left CI on March 14, 2000. As an at-will employee without a covenant not to compete, Pappas was free to compete against CI and even perform work for CI's customers after leaving CI. Further, CI did not have a tangible expectancy of performing future general contracting jobs for these customers. As a result, plaintiff should be precluded from offering any evidence of customers defendants contacted after March 14, 2000. Any such evidence is irrelevant and would unfairly prejudice defendants by raising confusion about the true facts at issue.
 (B) For an order limiting the evidence of damages at trial to jobs invoiced by IBG prior to March 14, 2000 and at the most jobs Pappas on behalf of IBG discussed with five customers prior to March 14, 2000 that were ultimately performed. As discussed above, Pappas, as an at-will employee without a covenant not to compete, was free to perform work for any entity, including CI's customers, after he left CI. Further, CI cannot establish a tangible expectancy in performing future work for these five customers absent Pappas' association with CI. Accordingly, damage evidence at trial should be limited to the jobs invoiced prior to March 14, 2000 or at the most jobs Pappas, on behalf of IBG, discussed with five customers prior to March 14 that were ultimately performed.
2. For an order precluding CI from introducing evidence of trade secrets or confidential proprietary information at trial. As a matter of law, CI's customer contact list is neither a trade secret nor entitled to judicial protection as confidential proprietary information.
3.For an order precluding plaintiff from introducing evidence or argument at trial of Pappas' alleged negligent supervision of work performed at the apartment of Mr. and Mrs. Wastin (Wastin Apartment) at 250 Mercer Street, because, as a matter of law, uncontroverted evidence establishes that Pappas properly supervised all work performed at the Wastin Apartment.
4.For an order precluding plaintiff from introducing evidence of Pappas' [*5]alleged breach of a purported "expense agreement," including documents related to a CI American Express card and a CI bank account card. Since this complaint was filed in April 2000, no written "expense agreement" has been produced and no testimony supporting any written or oral agreement has been elicited. Any evidence of a purported "expense agreement" which simply does not exist, is irrelevant and would only serve to prejudice defendants and risk confusion as to the true facts at issue.
5.For an order precluding the purported expert
witnesses of plaintiff from testifying at trial on the grounds that plaintiff's notice of its purported expert witness woefully lacks any detail regarding the proposed testimony, plaintiff's expert is not qualified to testify as to the opinions proposed, and plaintiff's notice of an expert witness on the eve of trial is untimely.
The function of a motion in limine is to permit a party to obtain a preliminary order before or during trial excluding the introduction of anticipated inadmissible, immaterial, or prejudicial evidence or limiting its use (State of New York v Metz, 241 AD2d 192, 198[1st Dept]). "[A] motion in limine is an inappropriate substitute for a motion for summary judgment" (Rondout Elec., Inc. v Dover Union Free School Dist., 304 AD2d 808; Marshall v 130 N. Bedford Rd. Mount Kisco Corp., 277 AD2d 432; lv denied 96 NY2d 714; Downtown Art Co. v Zimmerman, 232 AD2d 270).
 PLAINTIFF AND DEFENDANTS' FIRST MOTION IN LIMINE
The issue presented by the parties in their first respective motions is whether plaintiff may present evidence of its alleged damages for breach of fiduciary duty beyond the date Pappas was employed by the plaintiff corporation and had an ownership interest in the corporation. CI seeks to preclude the defendants from objecting to plaintiff's claims for damages and lost profits, through the date of trial, based upon defendant Pappas' alleged breach of fiduciary duty as an officer and shareholder of the plaintiff corporation. Defendants seek to preclude evidence of customers they performed work for after March 14, 2000, and to limit evidence of damages to work invoiced by the defendants prior to March 14, 2000.
At the outset, the court finds that a motion in limine cannot be used to preclude a defendant from asserting a defense. The court, in its prior orders, directed the defendants to produce invoices, contracts and purchase orders where defendants had contacts with plaintiff's prior customers through March 28, 2000, and as regards a notice to admit precluded defendants from objecting to invoices which were generated after March 28, 2000 but arose out of contacts that occurred through March 28, 2000. The court, however, made no determination as to whether such documents obtained during the course of discovery would be admissible at trial. The doctrine of law of the case, therefore, is inapplicable here.
It is undisputed that CI is a general contracting business and that it obtains work by submitting competitive bids for improvements to the facilities of private entities. CI in the second cause of action seeks to recover damages of no less than $1,000,000 for Pappas' alleged "breach of his fiduciary duties and defendants' acts of unfair competition". In the fourth cause of action plaintiff seeks to recover not less than $1,000,000 and alleges that Pappas and IBG "unlawfully solicited business from plaintiff's customers during and subsequent to Pappas' [*6]employment by virtue of the trade secrets and proprietary and confidential customer information...". In the ninth cause of action plaintiff seeks to recover not less than $1,000,000 and alleges tortious interference by the defendants with the plaintiff's "ongoing continuous and lucrative business relationship[s]". Plaintiff does not allege in its complaint that it had an employment agreement with Pappas, or that it and Pappas entered into a covenant not to compete, or that the shareholder's agreement contained a covenant not to compete. Rather, it is undisputed that Pappas was an employee-at-will, that there was no covenant not to compete, and that he was a vice-president and 2% shareholder of the plaintiff up until the date of his resignation. Pappas orally terminated his employment with the plaintiff corporation as of March 14, 2000, and on March 28, 2000 tendered a written resignation to the corporation's president, returned certain corporate property that had been in his possession and requested that his shares of stock be transferred to the corporation in accordance with the shareholder's agreement. Pappas did not receive any compensation from the corporation after March 14, 2000.
It is well settled that "'[an employee] is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties. Not only must the employee or agent account to his principal for secret profits but he also forfeits his right to compensation for services rendered by him if he proves disloyal'" (Maritime Fish Prods. v World-Wide Fish Prods., 100 AD2d 81, 88, quoting Lamdin v Broadway Surface Adv. Corp., 272 NY 133, 138; see also, American Map Corp. v Stone, 264 AD2d 492, 492-493).
The corporate opportunity doctrine prohibits a corporate employee from utilizing information obtained in a fiduciary capacity to appropriate a business opportunity belonging to the corporation (see, Alexander & Alexander of New York, Inc. v Fritzen, 147 AD2d 241, 246). This doctrine applies even after one owing fiduciary duties leaves his or her corporate employment (see, Abbott Redmont Thinlite Corp. v Redmont, 475 F2d 85, 88). The doctrine's application is limited, however, to business opportunities in which a corporation has a "tangible expectancy" which means "something much more less tenable than ownership, but, on the other hand, more certain than a desire or a hope." (Alexander & Alexander of New York, Inc. v Fritzen, supra, at 247-248).
 Plaintiff obtains its customers by submitting competitive bids for discrete jobs, and has no guarantee that it will obtain a contract for a particular job when it submits its bid. In addition, plaintiff has no expectation of an on-going relationship with each customer once a particular job is finished. Under these circumstances, the fact that plaintiff has done business with a particular customer in the past does not create a business opportunity which is capable of being appropriated. Therefore, in support of its claim of breach of fiduciary duty based upon a misappropriation of business opportunities, plaintiff may not present evidence at trial of work performed by defendants which defendants obtained by bids or solicitations after March 28, 2000.
The proper measurement of damages for an alleged breach of fiduciary duty to an employer:
In Gomez v Bicknell, (302 AD2d 107, 113-114) the court
stated that the
"remedy for breach of fiduciary duty is
[*7]
not only to compensate for the wrongs but
to prevent them (see, Diamond v Oreamuno,
24 NY2d 494, 498). The remedy, not unlike
applying a constructive trust, is disgorgement
for breach of the loyalty an employee owes
to the employer (see, Western Elec. Co. v
Brenner, 41 NY2d 291). This is not to say
that other methods of calculating an
employer's damages are unavailable. As an
alternative to an accounting of the disloyal
employee's gain, a calculation of what the

employer would havemade of the diverted
corporate opportunity is an available measure of damages (see, Harry R. Defler Corp. v Kleeman,
19 AD2d 396, 403-404, 243 NYS2d 930, affd
19 NY2d 694). The choice of remedy belongs to
the employer (see, Western Elec. Co. v Brenner,
supra at 295, citing Restatement [Second] of
Agency § 421A,Comment [c])."
In support of its claim of breach of the duty of loyalty by Pappas, plaintiff may present evidence either of the amount Pappas gained as a result of the breach, or a calculation of what the employer would have made of the diverted corporate opportunity. In the event that plaintiff elects to present evidence of Pappas' gain, and meets its prima facie burden of showing damages, then the burden shifts to Pappas to demonstrate the amount of his direct costs in generating this gross income because he is in exclusive possession of that information. Plaintiff would then have the opportunity to question the reasonableness of any deduction (see, Gomez v Bicknell, supra at 115). Plaintiff, thus, in support of its claims against Pappas for breach of fiduciary duty, is entitled to present evidence during the trial, of the bonus payments made to Pappas, evidence of work commenced by Pappas but not completed by March 28, 2000, as well as work obtained by Pappas on behalf of the defendant corporation prior to March 28, 2000 but was not commenced until after that date for which he accepted payment on behalf of himself and/or IBG. As regards evidence of work obtained and performed by defendants after March 28, 2000, the court finds that such evidence is irrelevant to the plaintiff's claims for breach of fiduciary duty and unfair competition. The plaintiff's first in limine motion which seeks to preclude the defendant from presenting evidence of damages and lost profits through the date of trial is denied. Defendants' first in limine motion to preclude plaintiff is granted to the extent indicated above.
 PLAINTIFF'S SECOND IN LIMINE MOTION
The plaintiff's second in limine motion seeks to limit
defendants' proof of expenses on jobs performed for plaintiff's former or current customers to "direct costs". As stated above, the evidence submitted by the parties shall be limited to work performed by the defendants during the time Pappas was an employee and officer of the plaintiff [*8]through March 28, 2000, and includes work that was solicited by Pappas prior to March 28, 2000 but was not commenced or completed prior to that date. In the event that plaintiff meets its burden of proof as to its damages, under the rule set forth in Gomez (supra), defendants may present evidence of their direct costs in generating this income. Gomez (supra), however, did not place any limitation on the type of evidence that could be presented to establish "direct costs", and did not limit deductions from damages to "direct costs". The plaintiff's second in limine motion therefore is denied.
 PLAINTIFF'S THIRD IN LIMINE MOTION
The plaintiff's third in limine motion asserts that
defendants should be precluded from offering checks and other evidence of payment to subcontractors and vendors which were not already produced during discovery. The court in an order dated
September 15, 2003 denied plaintiff's prior motion to preclude defendants from introducing at trial invoices and other documents in their possession on the grounds of spoliation of evidence without prejudice to the plaintiff's moving for the imposition of a sanction at trial, upon a showing of genuine prejudice. Plaintiff has not made a showing of genuine prejudice, as it previously received copies of all invoices and other documents pertaining to the relevant time period, and has failed to demonstrate that these documents are necessary to the prosecution of its action. Defendants assert that they do not intend to use any documents in support of their expenses at trial that were not previously produced. To the extent that defendants may have located checks evidencing payment to subcontractors and vendors that they previously believed were destroyed in the routine course of business, plaintiff has not established that the defendants now seek to rely on these documents. In any event, admissible evidence of such payments exists and was previously provided to the plaintiff. The third branch of plaintiff's motion therefore is denied.
 PLAINTIFF'S FOURTH IN LIMINE MOTION
Plaintiff in its fourth in limine motion seeks to preclude defendants' expert from testifying on the grounds that the second disclosure statement provided by the defendants does not comport with the court's order of January 15, 2004. The court has reviewed the supplemental disclosure statement and finds that it is sufficient. Plaintiff's fourth in limine motion is therefore denied.
 PLAINTIFF'S FIFTH IN LIMINE MOTION 
Plaintiff in its fifth in limine motion seeks to preclude the defendants' expert, if he is permitted to testify, from testifying about defendants' alleged expenses on jobs performed for plaintiff's "current or former customers" except for "direct costs". Inasmuch as Gomez (supra) neither defined what constitutes "direct costs", nor limited expenses to "direct costs", the court declines to limit the defendants' expert's testimony as to the costs incurred by the defendants on work solicited and performed during Pappas' employment with the plaintiff through March 28, 2000 and on work solicited through March 28, 2000 and commenced or completed thereafter. Therefore, plaintiff's fifth in limine motion is denied.
 DEFENDANTS' SECOND IN LIMINE MOTION
Defendants in their second in limine motion seek to preclude evidence of trade secrets or confidential proprietary information.
[*9]
New York courts take a strict approach to the enforcement of restrictive covenants. The Court of Appeals in American Broadcasting Companies, Inc. v Wolf (52 NY2d 394, 406), stated that "[a]lthough in a proper case an implied-in-fact covenant not to compete for the term of employment may be found to exist, anticompetitive covenants covering the postemployment period will not be implied." A former employee's solicitation of the trade of customers of his employer after the termination of his employment, does not constitute unfair competition, in the absence of an agreement to the contrary (see, Pangia & Co. CPAs, P.C. v Diker, 291 AD2d 539). Thus, absent the existence of a postemployment covenant not to compete, no such covenant may be implied here, and no evidence may be submitted in support of a claim of unfair competition.
It is fundamental that absent a restrictive covenant not to compete, an employee is free to compete with his or her former employer unless trade secrets are involved or fraudulent methods are employed (see, Reed, Roberts Assocs. v Strauman, 40 NY2d 303, rearg denied 40 NY2d 918; Walter Karl, Inc. v Wood, 137 AD2d 22, 27; Catalogue Serv. v Henry, 107 AD2d 783; accord, Zurich Depository Corp. v Gilenson, 121 AD2d 443, 444). "Knowledge of the intricacies of a business operation does not necessarily constitute a trade secret and absent any wrongdoing it cannot be said that a former employee 'should be prohibited from utilizing his knowledge and talents in this area'" (Catalogue Serv. v Henry, supra, at 784, quoting from Reed, Roberts Assocs. v Strauman, supra, at 309). Nor will trade secret protection attach to customer lists where such customers are readily ascertainable from sources outside the former employer's business (see, Catalogue Serv. v Henry, supra, at 784; Leo Silfen, Inc. v Cream, 29 NY2d 387, 392) unless the employee has engaged in an act such as stealing or memorizing his employer's customer lists (see, Amana Express, Intl. v Pier-Air Intl., 211 AD2d 606; Greenwich Mills Co. v Barrie House Coffee Co., 91 AD2d 398, 402). Similarly, an employee's recollection of information pertaining to specific needs and business habits of particular customers is not confidential (see, Walter Karl, Inc. v Wood, supra; Catalogue Serv. v Henry, supra, at 784; Anchor Alloys, Inc. v Non-Ferrous Processing Corp., 39 AD2d 504, 507, lv denied 32 NY2d 612). Although there is generally no accepted definition of a trade secret, one which has been cited with approval by the Court of Appeals is "any formula, pattern, device or compilation of information which is used in one's business, and which gives one an opportunity to obtain an advantage over competitors who do not know or use it" (Ashland Mgt. v Janien, 82 NY2d 395, 407; Eastern Business Systems, Inc. v Specialty Bus. Solutions, LLC, 292 AD2d 336, 338).
Here, it is undisputed that there was no post-employment anticompetitive covenant. Pappas therefore was free to engage in competition with his former employer, unless a trade secret was involved. The only trade secret alleged by CI is the customer list, which it claims Pappas removed or copied and used to solicit customers. Plaintiff alleges that defendants' use of the customer list constituted unfair competition. CI, however, provided potential customers with a list of customers it had previously performed work for, thereby making its customer list available to the general public. In addition, the names of the contact persons who handled construction matters for the former customers were readily ascertainable from the customers themselves. The customer list therefore cannot qualify as a trade secret. Defendants' motion to preclude plaintiffs from offering evidence of trade secrets and defendants' alleged use of the customer list is granted.
[*10] DEFENDANTS' THIRD IN LIMINE MOTION
 Defendants in their third in limine motion seek to preclude evidence of negligent supervision at the Wastin apartment. The work performed by plaintiff in the Wastin apartment was commenced during the period that Pappas was employed by CI and he was present in the apartment on certain days at which time he supervised the work. Defendants' motion to preclude evidence of negligent supervision therefore is denied.
 DEFENDANTS' FOURTH IN LIMINE MOTION
Defendants in their fourth in limine motion seek to preclude plaintiff from presenting evidence of defendants' alleged breach of a purported expense account agreement. It is undisputed that plaintiff's president, Anthony Raguseo, and the then vice-president, Emmanuel Pappas, each had corporate credit cards. There was no expense account agreement that covered the use of these credit cards. Raguseo and Pappas each used the corporate credit cards to pay for personal and business expenses and the corporation's accountant listed the credit card charges as business expenses on the corporation's business tax returns. In view of the fact that plaintiff CI admittedly did not have an expense account agreement with its employees and officers, was aware of both Raguseo and Pappas' use of the corporate credit cards and took advantage of the corporate tax laws as regards these expenses, it is precluded from presenting evidence of an alleged breach of an expense account agreement by defendant Pappas.
 DEFENDANTS' FIFTH IN LIMINE MOTION
Defendants in their fifth in limine motion seek to
preclude plaintiff's expert witness from testifying at trial, on the grounds that the notice provided by plaintiff is untimely, inadequate and does not comport with CPLR 3101. Although plaintiff was required to file its note of issue on September 21, 2001, the parties did not complete all discovery, including depositions, until shortly before the first day of trial. Plaintiff's delay in serving a notice identifying the expert witness does not, in itself, warrant an order of preclusion
(CPLR 3101[d]). Plaintiff's expert disclosure statement is sufficient, and in the event the plaintiff elects to have his expert testify at trial, the court will determine at that time whether he is qualified as an expert as regards plaintiff's claims for damages. Defendant's fifth in limine motion therefore is denied.
 CONCLUSION
In view of the foregoing, plaintiff's first in limine
motion which seeks to preclude the defendants from objecting to plaintiff's claims for damages and lost profits, through the date of trial is denied; the plaintiff's second in limine motion which seeks to limit defendants' proof of expenses on jobs performed for plaintiff's former or current customers to "direct costs" is denied; the plaintiff's third in limine motion which seeks to preclude defendants from offering checks and other evidence of payment to subcontractors and vendors which were not already produced during discovery is denied; the plaintiff's fourth in limine motion which seeks to preclude defendants' expert from testifying at trial is denied; and the plaintiff's fifth in limine motion which seeks to preclude the defendants' expert, if he is permitted to testify, from testifying about defendants' alleged expenses on jobs performed for plaintiff's "current or former customers" except for "direct costs" is denied.
 Defendants' first in limine motion which seeks to preclude evidence of customers they performed work for after March 14, 2000, and to limit evidence of damages to work invoiced by [*11]the defendants prior to March 14, 2000, is granted to the extent that plaintiff may not present evidence at trial of work performed by defendants which defendants obtained by bids or solicitations after March 28, 2000. Plaintiff, however, in support of its claims for breach of fiduciary duty, is entitled during the trial of the bonus payments made to Pappas, to present evidence of work commenced by Pappas but not completed by
March 28, 2000, and evidence of work obtained by Pappas on behalf of IBG prior to March 28, 2000 but not commenced until after that date for which he accepted payment on behalf of himself and/or IBG. Plaintiff may present evidence either of the amount Pappas gained as a result of the breach, or a calculation of what CI would have made of the diverted corporate opportunity. In the event plaintiff elects to present evidence of Pappas' gain, and meets its prima facie burden of showing damages, then Pappas may demonstrate the amount of his direct costs as well as other expenses incurred in generating this gross income, and plaintiff will have the opportunity to question the reasonableness of any deduction. The parties' may also present evidence of the net profit made on any of the work which falls within the applicable time period. Defendants' second in limine motion which seeks to preclude evidence of trade secrets or confidential proprietary information is granted; defendants' third in limine motion which seeks to preclude evidence of negligent supervision at the Wastin apartment is denied; defendants' fourth in limine motion which seeks to preclude plaintiff from presenting evidence of defendants' alleged breach of a purported expense account agreement is granted; and defendants' fifth in limine motion which seeks to preclude plaintiff's expert witness from testifying at trial is denied.
 Short form order signed herewith.
.........................
Thomas V. Polizzi, J.S.C.

Decision Date: April 07, 2004